UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-81192-CIV-COHN/SELTZER

JEFF M. BROWN, KENNETH J.
RONAN and B.R.S REALTY, L.C.,
a Florida limited liability company,

    Plaintiffs,

vs.

BRANCH BANKING AND TRUST
COMPANY, a foreign banking corporation,

    Defendant.
_____/

ORDER ON PLAINTIFFS' MOTION TO COMPEL AND
DEFENDANT'S MOTION FOR PROTECTIVE ORDER

THIS CAUSE is before the Court on Plaintiffs' Motion to Compel Deposition of President of Defendant, Branch Banking and Trust Company (DE 18), Defendant's Response thereto and Motion for Protective Order to Preclude Deposition of President of Defendant, Branch Banking and Trust Company (DE 22), Plaintiffs' Reply (DE 23), and Defendant's Sur-reply (DE 26). The Court being sufficiently advised, it is hereby ORDERED that Plaintiffs' Motion to Compel Deposition of President of Defendant, Branch Banking and Trust Company (DE 18) is DENIED and that Defendant's Motion for Protective Order to Preclude Deposition of President of Defendant, Branch Banking and Trust Company (DE 22) is GRANTED for the reasons set forth below.

BACKGROUND

In 2004, Plaintiff Jeff Brown executed two promissory notes and mortgages, which were secured by property in Citrus County, Florida, and Plaintiff Kenneth Ronan executed a promissory note and a mortgage, which was also secured by property in Citrus County, Florida (collectively, the "Citrus County Loans").  In 2005, Plaintiff B.R.S. Realty, L.C., ("BRS") executed a promissory note and a mortgage, which was secured by the building in which Brown's and Ronan's law office was located in Palm Beach County, Florida; Brown and Ronan personally guaranteed the BRS loan (the "BRS Loan").

Through a series of bank mergers, acquisitions, and bank failures, BB&T acquired the Citrus County Loans and the BRS Loan pursuant to a Purchase and Assumption Agreement with the FDIC; that Agreement incorporated a Commercial Shared-Loss Agreement.  According to Plaintiffs, the Commercial Shared-Loss Agreement permits "BB&T to collect both the book value of acquired loans and its 'losses' . . . under the loans from the borrower, if possible, but, if ultimately unsuccessful, from the FDIC, while still continuing to pursue the collateral for its own benefit and the enhancement of its corporate profits."  Corrected Amended Complaint ¶ 11 (DE 8).

In 2008, the Citrus County Loans went into default for non-payment, and in October and November 2009, BB&T filed lawsuits for foreclosure, replevin, and damages in the state court in Citrus County, Florida (the "Citrus County Foreclosure Actions").  Plaintiffs and BB&T entered into a Settlement Agreement, and on October 21, 2010, and March 11, 2011, Final Judgments of Foreclosure were entered by the courts in the Citrus County

Foreclosure Actions.¹

In October 2009, BB&T filed a lawsuit in Palm Beach County, Florida, against Plaintiffs here (and others), seeking to foreclose on the BRS Loan and recover damages (the "BRS I Foreclosure Action"), even though that loan was allegedly "current at the time with no impairment of security to the bank." Id. ¶ 9.  According to the Corrected Amended Complaint, BB&T had alleged in that action that "Brown and Ronan, as Guarantors of the BRS note, had defaulted on the Citrus [County] Loans, and that those defaults constituted a default under the BRS notes and mortgage, entitling BB&T to accelerate the note and to foreclose on the Law Office [which property secured the promissory note]." Id. ¶ 37. Following a trial, in March 2013, the BRS I Court entered a Final Judgment against BB&T, dismissing all of its claims.  The court found that the defaults on the Citrus County Loans could not form the basis for a default on the BRS Loan.²

On May 30, 2012,  BB&T filed an action in Palm Beach County, Florida, against Plaintiffs here (and others) for foreclosure and damages (BRS II).  BRS II is based upon the same commercial property located in Palm Beach County that was the subject of the BRS I foreclosure action.  BB&T's Second Amended Complaint in that action asserts only a count for declaratory relief; BB&T seeks a declaration that the BRS Loan documents constitute a continuing obligation and that the defendants (Plaintiffs here) are in default for

---

¹ In one of the Citrus County Foreclosure Actions (the "Garcia Foreclosure Action"), Ronan and Brown sought to enforce the settlement agreement and sought sanctions against BB&T for alleged multiple breaches thereof.  The court in that action found that BB&T breached the enforceable settlement agreement.  The court's order is currently on appeal to the Florida Fifth District Court of Appeal.

² On June 6, 2013, the Florida Fourth District Court of Appeal affirmed the Final Judgment in BRS I.

failing to make payments as of March 2010. The defendants (Plaintiffs here) filed a counterclaim to quiet title (based on the Final Judgment in BRS I), and they seek a declaration that the loan documents are void or have been satisfied in full. That action was pending as of December 12, 2013 (when Defendants here filed a motion to dismiss (DE 13) Plaintiffs' Corrected Amended Complaint).[3]

This action arises out of BB&T's filing of the above-described foreclosure cases. Plaintiffs' Corrected Amended Complaint (DE 8) asserts the following claims against BB&T: (1) breach of settlement agreement; (2) breach of obligation of good faith and fair dealing; (3) fraud in the inducement; (4) negligent misrepresentation; (5) malicious prosecution; and (6) abuse of process.

### PLAINTIFFS' MOTION TO COMPEL AND DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Plaintiffs have informed Defendant BB&T that they intend to take the deposition of its president, Robert E. Greene, to which BB&T has objected. Plaintiffs now move the Court to compel Greene to appear for deposition.[4] Plaintiffs first argue that Greene's testimony is relevant to the implementation and administration of the Shared-Loss Agreement and the impact of that Agreement on the relationship between BB&T and Plaintiffs. Plaintiffs also argue that "Greene's knowledge, and supervision, or lack thereof,

---

[3] Defendant's Motion to Dismiss remains pending.

[4] Plaintiffs have not yet noticed Greene's deposition; their motion to compel, therefore, is technically premature. In light of Defendant's response and its motion for protective order, however, the Court will consider the motions on the merits. See Dart Indus., Inc. v. Acor, No. 6:06-cv-1864-Orl-28DAB, 2008 WL 1995105, at 1 (M.D. Fla. May 7, 2008) (noting that because prospective deposition was never noticed, the motion to compel was premature, but treating the plaintiff's response as a motion for protective order and resolving the motion on the merits).

4

of (a) [BB&T's] actions against the Plaintiffs; and (b) [BB&T's] policies regarding the prosecution of foreclosure actions, is directly relevant to Plaintiffs' claims for punitive damages. . . ." Motion at ¶ 3 (DE 18).  BB&T objects to Plaintiffs deposing its president (Greene) and moves the Court for a protective order to preclude the deposition. It argues that because Greene possesses no unique or superior knowledge, his deposition "is a poorly masked method of harassment and a means of imposing an undue burden, expense, and annoyance on both Mr. Greene and BB&T." Response/Motion at 3 (DE 22).

Courts have generally restricted parties from deposing high-ranking officials because (by virtue of their position) they "are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts." In re Bridgestone/Firestone, Inc. Tires Products Liab. Litig., 205 F.R.D. 535, 536 (S.D. Ind. 2002); see also Celebrity v. Ultra Clean Holding, Inc., No. C 05-4374 MMC (JL), 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007) ("Virtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse and harassment."). Although no *per se* rule prohibits depositions of top corporate executives, "courts frequently restrict efforts to depose senior executives where the party seeking the deposition can obtain the same information through a less intrusive means, or where the party has not established that the executive has some unique knowledge pertinent to the issues in the case." Simon v. Pronational Ins. Co., No. 07-60757, 2007 WL 60757, at *1 (S.D. Fla. Dec. 13, 2007) (Seltzer, M.J.) (quoting Cardenas v. The Prudential Ins. Co. of Am., Nos. Civ.99-1421(JRT/FLN), Civ.99-1422(JRT/FLN), Civ.99-1736(JRT/FLN), 2003 WL 21293757, at *1 (D. Minn. May 16, 2003)); see, e.g., Thomas

5

v. Int'l Business Machines, 48 F.3d 478, 483-84 (10th Cir. 1995) (upholding protective order prohibiting deposition of senior executive where lower level employees were available for deposition and where senior executive lacked personal knowledge of case); Salter v. Upjohn, 593 F.2d 649 (5th Cir. 1979) (upholding district court's issuance of protective order vacating notice of deposition of corporate defendant's president; order did not completely prohibit deposition but merely required the plaintiff to first depose other employees); Bicek v. C & S Wholesale Grocers, Inc., No. 2:13-cv-0411-MCE-KJN, 2013 WL 5425345, at *4 (E.D. Cal. Sept. 27, 2013) ("[P]arties seeking to depose a high ranking corporate officer must first establish that the executive (1) has unique, non-repetitive, firsthand knowledge of the facts at issue in the case, and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success.") (quoting Groupion, LLC v. Groupon, Inc., No. 11-0870-MEJ, 2012 WL 359699, at *2 (N.D. Cal. Feb. 2, 2012)); Degenhart, M.D. v. Arthur State Bank, No. CV411-041, 2011 WL 3651312, at *1 (S.D. Ga. Aug. 8, 2011) ("A protective order precluding the deposition of a high-ranking executive officer will be granted where the officer possesses no unique knowledge regarding the underlying facts of the action and files a declaration stating his or her lack of knowledge.") (internal quotations marks and citations omitted); Carnival Corp. v. Rolls-Royce PLC, No. 08-23318-CIV, 2010 WL 1644959, at *3 (S.D. Fla. Apr. 22, 2010) (O'Sullivan, M.J.) ("An officer at the apex of the corporation can only be deposed if he or she has unique knowledge or the subject matter requested in deposition was pursued unsatisfactory through less intrusive means.") (quoting McMahon v. Presidential Airways, Inc., No. 6:05-cv-1002-Orl-28JGG, 2006 WL 5359797, at *2 (M.D. Fla. Jan. 18, 2006)).

As described by Plaintiffs, BB&T is "a banking corporation . . . with assets of approximately $182 billion and more than 1800 branches . . . located in the states of North Carolina, South Carolina, Virgina, Maryland, West Virginia, Kentucy, Tennessee, Georgia, Florida, Alabama, Indiana, Texas and the District of Columbia." Corrected Amended Complaint ¶ 6 (DE 8). No question exists that BB&T's president is a high-ranking or "apex" corporate executive. Plaintiffs, therefore, bear the burden of demonstrating that it is necessary to depose BB&T's president (Robert Greene). See Degenhart, 2011 WL 3651312, at *1 ("[T]he party seeking to compel the deposition of a high-ranking executive [the deposing party] has the burden of showing that [the target's] deposition is necessary."); see also Little League Baseball, Inc. v. Kaplan, No. 08-60554-CIV, 2009 WL 426277, at *2 (S.D. Fla. Feb. 20, 2009) (Simonton, M.J.) (noting that the "[d]efendant [had] failed to satisfy his burden of showing that it [was] necessary to compel the deposition of [the plaintiff's] chairman"). More specifically, before deposing Greene, Plaintiffs must show that he has some unique personal knowledge regarding the facts underlying the action and that no less intrusive means (such as serving interrogatories, deposing a Rule 30(b)(6) corporate representative and/or lower level employees) exist. Here, Plaintiffs have argued merely that the topics on which they intend to question Greene are "relevant" and (with respect to the issue of the appropriateness of punitive damages) Greene's testimony would be more "potent" than that of a lower ranking official.

The Court is not persuaded that Greene's deposition is necessary at this time, particularly as Plaintiffs have yet to take any discovery. Should less intrusive means prove unsuccessful in obtaining the information Plaintiffs seek, and should Plaintiffs be able to demonstrate that Greene possesses unique, personal knowledge about the facts of this

7

case, Plaintiffs may then move to depose Greene.

DONE AND ORDERED in Fort Lauderdale, Florida, this 22nd day of January 2014.

_____
BARRY S. SELTZER
CHIEF UNITED STATES MAGISTRATE JUDGE

Copies to:

All counsel of record